IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LESTER DeSHAZOR,<br><br>   Plaintiff,<br><br>v.<br><br>CO II CHARLES BARB,<br>CO II TREY BRENNEMAN,<br>COS WILLIAM SLATE,<br>CO II CLINTON DAVIS,<br>CO II DAVID HEDRICK,<br>WARDEN FRANK BISHOP,<br><br>   Defendants. | Civil Action No.:  PX-19-1123 |

**MEMORANDUM OPINION**

In this civil rights action, Plaintiff Lester DeShazor alleges that Defendants used excessive force and retaliated against him for complaining about prior mistreatment. Defendants have moved to dismiss the action or alternatively for summary judgment to be granted in their favor. ECF No. 16. DeShazor opposes the motion. ECF Nos. 19 and 22.[1] The issues are fully briefed and a hearing is not needed. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, Defendants' motion, construed as a Motion for Summary Judgment, is denied in part and granted in part.

**I.  Background**

On December 15, 2016, Defendant Officer Charles Barb was assigned to the administrative segregation housing unit, Unit 5, holding approximately 300 inmates of which DeShazor was one. ECF No. 16-5 at 1-2, ¶4. Barb, along with Defendant Officer David Hedrick, conducted a

---

[1] On May 26, 2020, DeShazor's counsel entered his appearance (ECF No. 21), and on May 29, 2020, counsel filed a supplemental Response in Opposition (ECF No. 22). DeShazor's pending Motion to Appoint Counsel (ECF No. 20) shall be granted. Additionally, DeShazor's pending Motion for Extension of Time (ECF No. 18) is also granted.

supposedly random search of DeShazor's cell where they claim to have found a knife. Barb does not recall why a random search of DeShazor's cell was conducted but maintains that such searches took place every day. *Id*. at ¶ 5. However, Hedrick admitted that the search of DeShazor's cell was not random; Hedrick chose to search DeShazor's cell. ECF No. 16-7 at 1, ¶ 4.

DeShazor alleges, and Defendants do not dispute, that DeShazor and Barb had a complicated history. In 2011, DeShazor named Barb as a participant in an excessive force suit brought in this Court. *See DeShazor v. Beal*, Civil Action RWT-11-3412 (D. Md. 2012). Also, on several occasions, Barb has denied DeShazor recreation time and use of the phone. ECF No. 19-1 at 5-6. In fact, DeShazor had moved to a cell on the upper tier to escape Barb, who usually controls recreation for the bottom tier. *Id*. at 5. Consequently, when Barb again denied DeShazor phone and recreation privileges on December 15, 2016, DeShazor asked for standard Administrative Grievance Process, or "ARP," forms used to lodge a formal complaint. *Id*. at 7.

Shortly following DeShazor's request, Barb and Hedrick arrived to search DeShazor's cell. Before starting the search, Barb asked which locker belonged to DeShazor. Within five minutes, defendants discovered a knife. *Id*. at 2, *see also* ECF No. 16-4 at 28. After the knife was found, Barb escorted DeShazor to a different housing unit, housing unit 4. ECF No. 16-5 at 3, ¶ 7.

During the escort, and according to Barb, DeShazor "resisted." Barb offers no details as to the manner of DeShazor's resistance. Barb, maintains, however, that he had to apply a "short burst" of pepper spray to get DeShazor into a holding "cage." *Id*. Additional officers were called to respond to the incident, namely Defendants Davis, Brenneman, Shetler, and Slate. ECF No. 16-3 at 27.

DeShazor steadfastly denies becoming agitated or resisting. ECF No. 3 at 2. Consistent with DeShazor's recollection, video surveillance shows DeShazor calmly waiting as his cell is

searched.  Similarly, as Barb escorts DeShazor across the prison yard from Unit 5 to Unit 4, DeShazor puts up no struggle or resistance.  ECF No. 16 at Ex. 11 (16-WC-101 11:57:14:348 through 11:58:36:956).  Surveillance video also shows Barb pushing DeShazor against the wall near Unit 4 door while DeShazor's head was lowered and his hands still cuffed behind his back.  ECF No. 16 at Ex. 10 (filed separately 16-WC-099 at 11:58:23:054 - 11:58: 29:983).  The video surveillance further depicts seven additional officers arriving in response to Barb's request for assistance, but at no time does DeShazor appear to be "resisting."   Defendants also physically hit and punched DeShazor, injuring his eye and face, and damaging the nerves in his right hand.  ECF No. 16-3 at 7.

As to being pepper sprayed, DeShazor admits that he had to be "forced" into the cage.  But contrary to Barb's version of events, DeShazor describes being pepper sprayed with such vigor that the spray looked "like whipped cream" on his face.  ECF No. 19-1 at 10, *see also* ECF No. 19-2 at 1, ¶6.  DeShazor also states that the chemical stayed on his face for a long time without proper medical attention, aggravating his injuries.  ECF No. 19-1 at 3-4, 10-11.  Contemporaneous photographs of DeShazor support this contention.  ECF No. 16-3 at 52.

DeShazor also maintains that Barb planted the knife then lied about it as retribution for DeShazor having accused Defendant Barb of wrongdoing in the 2011 lawsuit.  ECF No. 19-1 at 4; ECF No. 16-4 at 33-34.  Although Barb contends that he had "no recollection whatsoever of any prior 2011 lawsuit," he does admit to having been interviewed in connection with an internal investigation regarding DeShazor's 2011 excessive force claims.  ECF No. 16-5 at 1, ¶3.  The internal investigation conducted in the 2011 case raised questions about the propriety of Barb's conduct.  *DeShazor v. Beal*, Civil Action RWT-11-3412 (D. Md. 2012) at ECF No. 16-3 at 11.

In contrast to DeShazor's version of events, Barb and Hedrick attest that not only did they find the knife in DeShazor's locker, but that DeShazor admitted in a written statement to possessing it.[2] On this point, DeShazor insists that the defendants fabricated the written statement. ECF No. 3-3 at 1; ECF No. 3 at 2. Evidence generated during the prison investigation of the incident supports DeShazor. Hedrick, oddly, recounts that he had DeShazor write the statement while his hands were cuffed behind his back. Hedrick maintains that DeShazor was able to shift his arms to write "the best that he could on the inmate statement." ECF No. 16-4 at 36-37. This is why, says Hedrick, he filled certain portions of the statement for DeShazor.

Equally odd, Hedrick maintains that he had DeShazor write the statement "in the lobby," conveniently outside the area captured by surveillance video. *Id.* But Barb's testimony during the prison investigation suggests the opposite: that Hedrick had *no* contact with DeShazor in housing unit 5 and before he was escorted to housing unit 4, thus undermining Hendrick's claim that DeShazor wrote the statement in the lobby of Unit 5. ECF No. 19-15 at 3. Additionally, the investigator who conducted the prison investigation noted with suspicion that the handwriting on the statement did not match any of DeShazor's writing samples. ECF No. 16-4 at 44.[3] A forensic handwriting analyst confirmed the handwriting on the statement is not DeShazor's. ECF No. 22-1 at 2.[4]

---

[2] The statement attributed to DeShazor reads, "Knife found in locker was mines." ECF No. 16-4 at 71.

[3] The Court notes that this incident prompted more than one investigation. ECF No. 16-4 at 13, 21. The investigation into whether DeShazor's statement was fabricated began after DeShazor denied writing the statement when Lt. Jeffrey Shimko showed it to him. *Id.* at 26. Shimko added that "there is something that doesn't sit well with this case" because DeShazor "doesn't have a history of having a weapon and doesn't have a behavioral history." *Id.*

[4] DeShazor's cellmate, Tjuantel Oliver, corroborates DeShazor. During the internal investigation into this incident, Oliver stated that Barb and Hedrick first entered their cell, confirmed whose locker belonged to whom, and then proceeded to "find" the knife. ECF No. 16-4 at 28. When the knife was found, DeShazor immediately asked Oliver if it was his. *Id.* Oliver also recalls that after the incident, officers gave him two blank Inmate Statement forms, but he only wrote one statement. *Id.* The investigation confirmed that taking Oliver's statement ran contrary to the "normal protocol" and common sense. As one investigating supervisor noted, it is simply "not normal" for "the cell mate to write a statement after a weapon was found and the other inmate had already claimed it." ECF No. 16-3 at 2-19; ECF No. 16-4 at 13, 27.

## II. Standard of Review

Because the parties have submitted evidence outside the four corners of the Complaint and have been given reasonable opportunity to present all pertinent material, the Court will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(d). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the non-movant without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses may not proceed to trial. *Bouchat*, 346 F.3d at 526.

### III. Analysis

### A. Excessive Force

DeShazor maintains that because he had not put up any resistance during his transfer to Unit 4, Defendants used excessive force in applying pepper spray, and in restraining, punching, and hitting him. To survive summary judgment on his excessive force claim, DeShazor must generate evidence that Defendants used force greater than necessary to bring DeShazor under control and applied such force "maliciously and sadistically to cause harm," not in an effort to "maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Factors for consideration are the need for application of force; the relationship between that need and the degree of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive. If force is applied maliciously and sadistically, then liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38. Deploying a chemical agent "in quantities greater than necessary or for the sole purpose of infliction of pain," constitutes excessive use of force. *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). *See also McCargo v. Mister*, 462 F. Supp. 813, 818 (D.Md.1978).

The claim survives challenge as to all Defendants save for Warden Bishop. As to the first alleged use of force – when Barb escorted DeShazor to housing Unit 4 – the claim cannot be decided in Defendants' favor. On the video evidence alone, the Defendants' contention that DeShazor resisted Barb is seriously called into question. Barb and DeShazor can be seen walking calmly to housing unit 4 which belies that any contemporaneous altercation took place. Indeed,

DeShazor rightly seeks additional discovery to obtain video surveillance of the area in front of the housing unit door to support DeShazor's claim that he never offered any resistance to Barb's escort. The Court credits DeShazor's need for additional discovery on this point. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge . . . ").

As to Barb's pepper spraying DeShazor, the Court similarly will not grant summary judgment. Sufficient evidence exists that DeShazor was sprayed beyond that which was necessary to address the situation at hand. Further, as DeShazor describes it, a reasonable fact finder could conclude that Barb's use of pepper spray constituted an unnecessary and malicious over-use of chemical agents. *See Iko*, 535 F.3d at 240.

DeShazor's excessive force claim against Defendants Shetler, Brenneman, and Davis is also the subject of a credibility determination not suitable for summary judgment. It is clear from the record that DeShazor suffered an injury to his face between the time he left housing Unit 5 and when he arrived at Unit 4. *See* ECF No. 16-3 at 29 (noting injuries to DeShazor's face over his left eye). Defendants simply deny the assault. ECF No. 16-6 at 1, ¶ 4 (Davis Decl.); ECF No. 16-8 at 1, ¶ 3 (Brenneman Decl.); and ECF No. 16-12 at 1, ¶ 3 (Shetler Decl.). The core inquiry, therefore, remains a question of fact for the jury: whether the force used was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Wilkens v. Gaddy*, 599 U.S. 34 (2010). Summary judgment is therefore denied as to the excessive force claim.

**B.     Retaliation**

The Court next turns to DeShazor's retaliation claim against Barb and Hedrick. ECF 19-1 at 6-8. It is well-established that "prison officials may not retaliate against prisoners for exercising

their right to access the courts." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017), *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *see also Hudson v. Palmer*, 468 U.S. 517, 523, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984) (recognizing First Amendment right to petition for redress of grievances). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Where retaliatory conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights," the claim may proceed. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).

DeShazor's theory of retaliation rests on his prior 2011 lawsuit and his request for administrative remedy procedure forms just prior to the cell search. The filing of a lawsuit and an attempt to access administrative remedies are protected activities. *See Booker*, 855 F.3d at 545 (First Amendment protects an inmate's right to file a prison grievance without fear of retaliation).

Defendants' only retort is that Barb was not a named party in the 2011 case. This is true. *See DeShazor v. Beal, et al.*, Civ. Action RWT-11-3412 at ECF No. 1 (D. Md. 2012) (hereinafter "*DeShazor I*"). However, Barb had clearly been accused of misusing his power as a corrections officer and acting in concert with the defendant officers in 2011 to visit a beatdown on DeShazor. *DeShazor I,* ECF Nos. 1 and 22. DeShazor had also filed an ARP at the time, claiming Barb had fabricated the rule violation against him. *Id*. As a result of that ARP, and Barb's questionable conduct, the Warden reduced DeShazor's sanction for his part in the altercation. *Id*. at 15. Given

that Barb's involvement in the 2011 litigation was significant, the retaliation claim simply is not defeated because Barb was not a named Defendant.

In addition, record evidence supports that on the day of the December 15, 2016 incident, DeShazor had requested an ARP form right after Barb denied him phone and recreation privileges. A trier of fact could conclude that Barb and Hedrick, rather than supply the ARP forms, retaliated by planting the knife and fabricating DeShazor's written admission. When considering the evidence supporting that the search was hardly random, the knife was planted, and DeShazor's admission was fabricated, genuine disputes of material fact exist regarding Defendants' retaliatory animus toward DeShazor for seeking protection through the ARP process. Summary judgment is denied on this claim as to Barb and Hedrick.

**C.    Unreasonable Search and Seizure**

DeShazor next contends that the search of his cell violated his Fourth Amendment protections against unreasonable searches and seizures. However, as a matter of law, prisoners do not maintain a reasonable expectation of privacy in prison cells triggering Fourth Amendment protection. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984) ("society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); *Cf. Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979) (pre-trial detainees lose right of privacy from routine searches). To be sure, Defendants' proffered excuse of conducting a "random" search rings hollow and is relevant to DeShazor's retaliation and excessive force claims; but the search itself does not constitute a Fourth Amendment violation. Summary judgment is granted in Defendants' favor on this allegation.

### D. Warden Bishop

DeShazor avers that Warden Bishop must be held liable for failing to honor DeShazor's 2011 transfer request in an attempt to escape Barb's animus. ECF No. 19-1 at 11, 13. Putting to the side the record evidence which demonstrates Bishop was not the Warden during the operative time in 2011, the claim is also time-barred. The pertinent statute of limitations for a Section 1983 claim is imported from relevant state law. For an action sounding in tort, Maryland's statute of limitations applies. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). The applicable limitations on filing suit is three years from the date of the occurrence. *See* MD. Cts & Jud. Pro. Code § 5-101. Thus, even if DeShazor's claim against Bishop is somehow legally cognizable, DeShazor would have needed to bring the claim, at the latest, in 2014. This action was filed on April 4, 2019. The claim thus fails as time barred. Summary judgment is granted as to Defendant Bishop.

### E. Qualified Immunity

Finally, Defendants make the blanket assertion that they are all entitled to summary judgment on qualified immunity grounds. Qualified immunity is a defense that shields government officials from liability "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S.Ct. 577, 589 (2018), citing *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). A constitutional violation is "clearly established" when "at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Wesby* 138 S.Ct. at 589, citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

At the summary judgment stage, and viewing the evidence most favorably to DeShazor, Defendants are not entitled to qualified immunity as a matter of law. As framed by DeShazor, the constitutional right at issue – to be free from unwarranted and retaliatory physical assault and prolonged use of chemical agents – is clearly established. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). Similar is the right to be free from retaliatory animus when seeking redress for misconduct. *See Booker*, 855 F.3d at 544. Thus, if the trier of fact credits DeShazor's version of events and finds that Defendants violated his constitutional rights as already discussed, Defendants likely will not be given the protection of qualified immunity. But because such genuine issues of disputed fact exist as to the excessive force and retaliation claims, summary judgment on qualified immunity grounds is wholly inappropriate. *Willingham*, 412 F.3d at 559, citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992*)*.

**IV.   Conclusion**

Defendants' motion, construed as one for summary judgment, is granted as to Warden Bishop and as to the Fourth Amendment claim. The motion is otherwise denied. DeShazor's Motions for Extension of Time and for Appointment of Counsel (ECF Nos. 18 and 20) are granted. A separate Order follows.

|  |  |
|---|---|
| 9/8/20 | /S/ |
| Date | Paula Xinis |
|  | United States District Judge |